MARY MOEHN, Appellant, v. MARTIN MOEHN.

**Evidence:** REBUTTAL. The testimony of plaintiff in an action on a promissory note which is in the possession of the maker, to the effect that the defendant obtained the note from her by fraud without paying the same, is not admissible in rebuttal of defendant's testimony that he paid and took up the note, where she rested her case in chief upon evidence that the note was transferred to her by the original payee, and that she never transferred it and that the defendant never paid it to her, without offering any evidence to support the allegation of her petition that the defendant obtained the possession of the note by fraud, except as it may be inferred from the statement that he had not paid it to her. Such evidence on her part was essential to her recovery and a part of her main case and she cannot introduce it on rebuttal for the first time, even though it tended, in some degree, to rebut defendant's evidence.

DELIVERY BY INDORSEMENT: *Presumption.* Plaintiff in an action upon a negotiable promissory note, indorsed by the payee, is bound to show that it was delivered to her by the payee with the intention of transferring the title, and she cannot rest upon the legal presumption of delivery arising under the statute from the indorsement alone, where the note is in possession of the defendant and it is denied that it was ever delivered to her

SAME: *Instructions.* An instruction that a presumption of ownership arises from possession of a note indorsed by payee, and while so possessed, without further evidence, is not in conflict with the foregoing rule as to presumptions arising under statute. The statutory presumption would govern if plaintiff possessed the note, and this instruction applies properly to such time as it may have been in her possession

DECLARATIONS OF ONE DECEASED Where it is not shown that the maker of a note was insolvent, declarations of a deceased payee and indorser that the note had not been paid, and was the property of his wife, made after he had parted with all interest therein, are not competent, as being against his pecuniary interest; and this is so notwithstanding that declarant was still under a contingent liability as indorser of the note.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTH, Judge.

TUESDAY, MAY 24, 1898.

PLAINTIFF states, as her cause of action, in substance, as follows: That on August 19, 1892, the defendant executed his promissory note for one thousand five hundred dollars, payable "to Henry Moehn, Sr.," sixty days after date with six per cent interest; that said note was endorsed, "Henry Moehn. August 21, 1892," and delivered to her; that it has never been transferred by her; that it is still her property, and is due and unpaid; that, without consideration or payment, and by fraud and false representations, the defendant obtained said note from plaintiff, promising and agreeing to return the same, which, upon demand, he fails and refuses to do. Plaintiff asks judgment for the amount of said note. Defendant admits the execution of the note, and denies every other allegation in the petition. He alleges that about the tenth day of November, 1892, he, without any knowledge of said alleged indorsement, and in the presence of plaintiff, paid said note in full to Henry Moehn, Sr., who then and there had possession of and surrendered said note to the defendant, without objection or claim being made by the plaintiff. On January 25, 1896, the jury found for the defendant, and found specially that Henry Moehn did not in August, 1892, endorse his name on said note, and deliver it to the plaintiff; that she did not retain possession of it until some time after December 1, 1892; and that it was delivered to the defendant in November, 1892. On the same day the court granted plaintiff thirty days to file a motion for a new trial, and rendered judgment on the verdict; on April 6, 1896, the court overruled plaintiff's motion for a new trial; and on August 31, 1896, the plaintiff served and filed a notice of appeal.—*Affirmed.*

*Power, Huston & Power* for appellant.

*S. L. Glasgow* for appellee.

GIVEN, J.—I. Appellant's motion to strike appellee's additional abstract, and appellee's motion to dismiss this appeal, have been heretofore overruled, and the case is now for consideration as presented in the abstracts. The assignments are that the court erred in excluding certain testimony of the plaintiff and of one C. F. Boesch, and in giving the fourth and fifth paragraphs of the instructions. Plaintiff, to sustain her action, called her daughter, Anna Hauser, who testified: That about August 20 or 25, 1892, Henry Moehn, Sr., was at her mother's home, with her mother, downstairs. That they called her, and that "Mr. Moehn took the note, and said, 'This is your mother's, if she agrees to marry me.' They were married about a week later. Mr. Moehn is now dead." Plaintiff testified in her own behalf that in August, 1892, the note was delivered to her; that it was indorsed by Henry Moehn, Sr., at the time of the delivery; that it remained in her possession until May, 1893; that she never sold or transferred the note; and that Martin Moehn never paid the note to her. It does not appear that any other evidence was offered in chief on behalf of the plaintiff. The defendant testified in his own behalf that the note was surrendered to him by his father, Henry Moehn, Sr., in November, 1892; that Mary Moehn was present at the time, and made no objection to the delivery of the note, and no claim that she owned the note, or had any interest in it; that he then, in the presence of said persons, marked the note, in ink, as paid, and erased his name by pen mark drawn through it; and that the note was in his possession from then until January, 1894, when, as a witness in another trial, he produced it, and gave it to the reporter. John M. Mercer, called by the defendant, testified: That about the last of March or the first of April, 1893, he went to Henry Moehn's house to make

·a collection, and that Mr. and Mrs. Moehn were both present. That Mr. Moehn said he could not pay him, and that he (Mercer) then asked for this note, and that they both said they had no such note. That Mary Moehn said that she had no such note,—had no note on Martin Moehn; that Martin did not owe her or her husband anything; and that the note had been paid. Plaintiff was then called in her own behalf in rebuttal; ·and having testified that she had this note during November and December, 1892, and that she gave it up in May, 1893, the following occurred: "Ques. State whether or not in May, 1893, you had any conversation with Martin Moehn, the defendant, in relation to this note; and, if so, state when it was, and what was said and done. (Objected to as incompetent, irrelevant, and immaterial; not proper rebuttal. Objection overruled, and defendant excepts.) Ans. She claims that Martin Moehn came there, and asked to see the note,—called her to the sitting room. When she showed it, took note out of her hands. (Defendant objected to the answer as incompetent, irrelevant, and immaterial, and not rebuttal. Objection sustained, and plaintiff excepts.)" (This testimony was given through an interpreter; hence the answers are given in the third person.) We have the single question whether this answer was proper rebuttal. Plaintiff not having possession of the note sued upon, and it being confessedly in the possession of the defendant, the presumption is that it has been paid; and the burden is upon the plaintiff to ·overcome this presumption by sustaining the allegations of her petition as to how the defendant came into the possession of the note. So far as appears, she rested her case in chief upon evidence that Henry Moehn said the note was hers if she agreed to marry him, and that they were married about a week later; that she kept the note until May, 1893; that she never

transferred it; and that the defendant never paid it to her.  She did not offer a syllable of evidence to support the allegation that defendant obtained possession of the note by fraud, except as it may be inferred from the statement that he had not paid the note to her. While her statement that defendant asked to see the note, and, when shown it, took it out of her hands, in May, 1893, does tend to rebut the defendant's testimony that he had taken up the note from his father in November, 1892, yet it was so clearly evidence that should have been offered in chief that we think it was not proper rebuttal.  If there had been any evidence offered in chief on this point, we might say otherwise; but plaintiff could not withhold evidence upon this point, essential to her recovery, and present it for the first time in rebuttal, even though it did tend in some degree to rebut the evidence of the defendant.  We think there was no error in this ruling.

II.  The next assignment of error presents the question whether the declarations of Henry Moehn, deceased, made in 1894, in the absence of the defendant, that the note had not been paid, and that his wife was the owner of it, were admissible in evidence against the defendant.  Plaintiff's counsel cite section 147, 1 Greenleaf Evidence, and *Mahaska County v. Ingalls*, 16 Iowa, 81.  In that case this court held that, to render such evidence admissible, it must appear that the declarant was dead, that the declaration was at the time against his pecuniary interest, that it was of a fact or facts of which he was immediately and personally cognizant, and that "the court should, upon the circumstances of a particular case, be satisfied that there was no personal motive to falsify the fact declared."  Whether the claim of the plaintiff or that of the defendant concerning this note be true, it certainly appears that Henry Moehn had parted with all

interest in that note as payee thereof.    It is insisted, however, that he was liable to the plaintiff as indorser. Let this be conceded; yet we do not think that his statements that the note had not been paid, and that it belonged to his wife, were so against his pecuniary interests as to render them admissible as evidence. They were surely in the interests of his wife, and therefore, to some extent, in his own interest.    If it was shown that the defendant was insolvent, there would be some reason for saying that the declarations were against the pecuniary interests of the deceased, in view of his indorsement of the note; but under the facts, we think there is no such showing of adverse pecuniary interests, nor of the absence of motive to falsify the fact, as to render this evidence competent.

III.    The court instructed that, the execution and the indorsement of the note being undisputed, the questions to be determined were, whether the note, while his property, was transferred by Henry Moehn, Sr., to the plaintiff, and whether the defendant made payment of the note to Henry Moehn, Sr., without notice of its transfer to plaintiff, or of her claim to, and interest in, it.    The court further instructed that, as to the first question, the burden was upon the plaintiff to establish by a preponderance of the evidence that the note in suit was transferred to her by Henry Moehn, Sr., while he was the owner of it, "with the intention on his part by such delivery to transfer the title of the said note to the plaintiff; and, if the plaintiff has failed to so establish the transfer of the said note to her by a preponderance of the evidence, your verdict must be for the defendant, without regard to the questions arising as to the defense of payment set up by the defendant." Plaintiff contends that, as non-negotiable instruments are transferable by indorsement thereon, it was error to instruct that the indorsement and delivery, to pass,

title, must have been with the intention of the payee to thereby transfer the title to the plaintiff. It is insisted that this instruction adds to the statute, that makes indorsement and delivery sufficient, the requirement that it was the intention on the part of the indorser, by delivery, to transfer the title. If plaintiff had brought this action upon the note as in her possession, these contentions would apply; but the question of delivery to her was in issue, and she was without possession as evidence of ownership. Her ownership was denied. And under these circumstances, and her relation to the payee, it was incumbent upon her to show an intention on the part of the payee to transfer the title of the note to her. She was not suing merely by virtue of a legal title, or as trustee, but as absolute owner of the note. After stating that the burden of proof as to the possession of the note might be changed, the court instructed that the possession of this note would afford a presumption of ownership in the party in possession, and that if the jury found that this note was indorsed in blank, and while so indorsed was held in the possession and under the control of the plaintiff, "this fact would create a presumption that she was the lawful owner of the note while it was so held in her possession, and would relieve her from the necessity of adducing other evidence to sustain her claim of ownership at the time in question, unless the presumption thus arising was rebutted or overcome by other evidence explaining or accounting for her said possession." Plaintiff's counsel insist that this is in conflict with what we have quoted from the prior instruction; but not so, we think. What is said in this last instruction as to presumption arising from possession is limited to the time, if any, that the jury might find the plaintiff was in possession of this note. If she was

suing upon this note as in her possession, this instruction would be correct, and all that the case would call for; but not having possession, and her ownership being disputed, the fourth instruction was correct, and the fifth consistent therewith, as applied to any possession the jury might find that she previously had. We discover no error prejudicial to appellant, and the judgment of the district court is therefore AFFIRMED.