Roscoe Petty et al., Referees, Plaintiffs, Appellees, v. Blanche Hewlett et al., Administrators, Defendants, Appellees, Grace Smith et al., Defendants, Appellants.

No. 44486.

OCTOBER 18, 1938.

REHEARING DENIED JANUARY 20, 1939.

C. W. Elson, for appellants.

D. L. Murrow, T. W. Miles, and H. F. Garrett, for appellees.

MITCHELL, J.—J. D. Petty and his wife, Sophia Petty, both died intestate, seized in fee of certain described real estate. On the 27th day of March, 1936, some of the heirs started an action, seeking to partition the real estate left by their father and mother. The administrators of the estates were made parties to said action. In the petition it was alleged that certain heirs were indebted to the two estates, and as a part of the relief it was sought to charge the indebtedness of each of the heirs against his interest in the real estate. All of the parties defendant were served with notice of the pendency of said cause, including Marley Petty, who on October 7, 1937, filed his answer, admitting liability to the estates, and that he was insolvent. On the 20th day of January, 1938, a decree in said partition action was entered, which provided for the appointment of appraisers to fix the value of the real estate, and of referees to sell the land.

And it further specifically provided "that the defendant Marley Petty has no interest whatever in said real estate for the reason that he is indebted to the plaintiffs and the other defendants in a sum in excess of the value of his interest in said real estate, and the interest of the plaintiffs and defendants, Roscoe Petty, Wilma Corporon, Flossie Logan, Blanche Hewlett and Darwin Petty, should therefore be an undivided one-fifth interest in all of said real estate instead of an undivided one-sixth interest."

After the filing of the petition, and prior to the entering of the decree, the appellants each obtained a judgment against the said Marley Petty. It should be noted that the judgment creditors did not intervene in the partition action.

The referees proceeded to sell the real estate, in compliance with the terms of the decree, and the day after the sealed bids were received the attorney of record representing Grace Smith and the Bamford Clinic, appellants in this case, orally notified the referees that appellants held judgments against Marley Petty, one of the parties to this action, and "if the referees paid out the proceeds of the sale without paying said judgments against Marley Petty they would do so at their peril; that the said judgment creditors were claiming the same rights to the proceeds of the sale that they had in the partitioned real estate." The referees then prayed that the court would direct them in their action. Notice was given Grace Smith and the Bamford Clinic, the appellants, and they appeared, filing objections to the final report, alleging that they were not parties to the action prior to the time of the filing of their written appearance, which was on the 7th day of February, 1938; that they were not parties to the action at the time the decree was entered on the 20th day of January, 1938, finding that Marley Petty had no interest in said real estate, and that they were not in any manner bound by said decree. They denied that Marley Petty was ever indebted to the estates of Sophia Petty and J. D. Petty.

The cause then came on for trial upon the final report of the referees, and the objections filed to same by appellants. Evidence was offered and the lower court on the 25th day of February, 1938, entered an order, approving the sale of the real estate, approving the final report of the referees, overruling the objections of appellants, and ordering distribution of the sums of money that came into the hands of the referees, in compliance with the report they had filed.

Being dissatisfied with this order, Grace Smith and the Bamford Clinic have appealed to this court.

It should be specifically noted: (1) That the appellants were not judgment creditors of Marley Petty at the time of the commencement of the partition action; (2) that the original petition prayed for the rights of the heirs to be adjudicated, and that the indebtedness of the heirs be offset against their interests in the real estate; (3) that the original decree found Marley Petty had no interest in the land sought to be partitioned; (4) that the original decree is not now being, and never has been, attacked by appellants.

There are many exceedingly interesting questions raised in this case.

Code section 12323 of the 1935 Code provides:

"12323. Lien on undivided interests. If the lien is upon one or more undivided interests, the holder thereof shall be made a party, and the lien shall, after partition or sale, remain a charge upon the particular interests or the proceeds thereof, but the amount of costs is a charge upon those interests, paramount to all other liens."

This statute, however, does not apply to the case at bar, for at the time the partition action was commenced the appellants did not have, and they do not claim to have had, any lien against the interests of any party in the real estate. Their judgments were not entered until after the partition action was commenced. They base their cause of action upon the case of Ferguson v. Hamilton, reported in 206 Iowa 1285, at page 1289, 221 N. W. 947, at page 948, where, in a statement not necessary to the decision, this court said:

"If appellant had seen fit to serve notice upon the referee and upon his debtor, Brewer, and had brought properly before the court the question of his right to Brewer's share in the property before distribution had been made by the referee, we would have an entirely different question from the one presented to us."

We do not find it necessary to pass upon this question in the case at bar.

In the petition it was alleged that Marley Petty was indebted to the estates in an amount in excess of the value of any interest he might have in the real estate, and that the estates

were entitled to an offset against his interest. Marley Petty filed answer, in which he admitted the indebtedness, and that he was insolvent. Upon the trial of the partition action the lower court found, and specifically set out in the decree, that Marley Petty had no interest in the real estate. That original decree has never been attacked. No claim is here made that there was any fraud in the entering of it. Appellants' right to recover is based solely upon the interest of Marley Petty in the real estate. If he had no interest in the real estate, then of course appellants have no right against the proceeds of the sale of the real estate in the hands of the referees.

It appears that this court has had some difficulty in arriving at a conclusion as to whether or not the amount which an insolvent devisee is owing to a solvent estate may, in a partition proceeding, be offset against his interest in the real estate, and whether such right is superior to the right of a judgment creditor who obtained his judgment against the devisee subsequent to the death of the party from whom the devisee claims the interest in the real estate.

In the case of Schultz v. Locke, 204 Iowa 1127, 216 N. W. 617, in an opinion written by Justice Faville, this court lays down certain propositions. We read as follows, at pages 1128-30, 216 N. W. at page 618:

"Under this state of facts, the question is whether the share of the devisee George in the real estate of the testator is subject to retainer of the amount of his indebtedness to the estate, superior to the lien of appellant's judgment. It is to be noted that the right of retainer or offset in distribution of the personal assets of the estate is not involved here.

"Some form of the question involved herein has been before this court in Rider v. Clark, 54 Iowa 292, 6 N. W. 271; McCormick v. Hanks, 105 Iowa 639, 75 N. W. 494; Russell v. Smith, 115 Iowa 261, 88 N. W. 361, and Senneff v. Brackey, 165 Iowa 525, 146 N. W. 24, 1 A. L. R. 978. Each of these cases was considered and reviewed in Woods v. Knotts, 196 Iowa 544, 194 N. W. 953, 30 A. L. R. 768. It is unnecessary to repeat the discussion at length. We have recognized the general rule that real estate passes to the devisee direct from the testator, and not through the executor, and that title vests in the devisee immediately upon the death of the testator, and that, as a general rule,

there is no right of retainer or offset for a debt of the devisee's to the estate, as against a devise of real estate.

"In the Brackey case we said: 'In the Russell case, supra, it was said, however: "There may be cases where, on account of the insolvency of the debtor, or some other cause, equity will interfere for the protection of the estate." This was perhaps dictum, and yet it was announced for the purpose of saving an exception to the general rule, if any such exception exists. As a matter of fact, many courts, and doubtless a majority, numerically, recognize and enforce the exception.'

"In that case we had two peculiar circumstances: (1) The debt arose after the death of the testator, and resulted from a conversion by the devisee of personal property belonging to the estate; and (2) the devisee was insolvent. We said:

"'* * * this opinion is not to be taken as a precedent for more than is actually decided. The general rules are as appellant's counsel claim them; but, in view of the peculiar facts shown by this record, the equities are so strongly with the representative of the estate that we are constrained to follow the authorities above cited, which introduce exceptions to the general rules, thus meting out full justice to all of the parties.'

"In Woods v. Knotts, supra, the estate of an intestate was involved. There was no personal estate. An heir was indebted to the estate. It was sought to offset said indebtedness against his interest as an heir in the real estate of the decedent. There were two peculiar facts in that case: (1) The heir was insolvent; and (2) the indebtedness was barred by the statute of limitations. We said:

"'It thus appears that the exception created by the Brackey case arises in equity, which treats the indebtedness of distributees to the estate as assets thereof, and is based upon their insolvency. The justice of the rule is apparent. It prevents the unfair advantage which must otherwise accrue to an impecunious distributee whose indebtedness to the estate could not be otherwise collected, and places the insolvent and solvent heir upon the same basis. We have already called attention to the decisions of this court in which the right to offset claims in favor of the estate against the share of a distributee in real property is denied. As pointed out in the Brackey case, the courts are divided upon this question; but it must be confessed that the reasons assigned by those denying such right are not very persuasive. We

need not, however, at this time, discuss this question. The personal property of the deceased in the case at bar was wholly insufficient to pay the claims against appellant, and it must be offset against his share of the real property or be lost to the estate. The exception noted meets this exact situation. Appellant is, and has long been, insolvent. The indebtedness to his mother arose out of the payment by her of notes which she had signed with him at different times, as surety. The only particular distinction between the facts in the Brackey case and the case at bar is that, in the former, Brackey was a devisee, and held property in trust for the benefit of the estate; and in this case, the distributee is a mere debtor. In equity, the claim against a distributee is treated as an asset of the estate, and in the distribution thereof, the effect is the same, whether money or property is withheld by a devisee, or the indebtedness of a distributee is not paid.' * * *

''The devisee is, however, insolvent, and the estate of decedent is unsettled. We think that insolvency of the devisee, where the estate is open and there is no personal estate for distribution, is a recognized exception to the general rule, and one which, under our prior cases, we are disposed to follow. * * *

''We hold that, under the facts of this case, the right of the executor to retainer or offset of the amount of the insolvent devisee's share in the real estate of the testator was superior to appellant's lien on said share.''

We think the above quoted opinion is controlling in the case at bar. Appellants' claim to any interest in the funds is based solely upon their judgments against Marley Petty. Marley Petty admitted the indebtedness to the estates, and in his answer admitted that he was insolvent. There is no personal property. The court entered the decree holding that Marley Petty had no interest in the real estate. There is no claim made here that there was any fraud in the entering of that decree. Upon the record before us the court was right in holding that Marley Petty had no interest in the real estate. As long as that decree stands, and it is not attacked here, the appellants would have no interest in any of the funds now in the hands of the referees, received from the sale of real estate in which Marley Petty had no interest.

It follows that the lower court was right in so holding. Judgment and decree is hereby affirmed.—Affirmed.

SAGER, C. J., and ANDERSON, RICHARDS, MILLER, and HAMILTON, JJ., concur.