IN RE ESTATE OF JOHN MILLER, deceased.

ALBERT W. MILLER, appellant, v. ROBERT MILLER, appellee.

No. 49031.

(Reported in 79 N.W.2d 315)

November 13, 1956.

Donald E. O'Brien and John T. O'Brien, both of Sioux City, for appellant.

Fred S. Nordenson, of Sioux City, for appellee.

Thompson, C. J.—John Miller died intestate, a resident of Woodbury County, on July 9, 1953. His son Robert Miller was appointed and qualified as administrator of his estate. No spouse survived John Miller, and the only other person entitled to share in his estate is the appellant, Albert W. Miller, another son. Robert Miller filed his final report as administrator on August 10, 1954, and prior to the time fixed for hearing Albert W. Miller filed a resistance and objections thereto. The issue thus made was determined by the trial court in favor of Robert Miller, and from this judgment we have the present appeal.

█ I. The controversy centers solely upon the construction to be placed upon certain language contained in three separate instruments known as debentures issued by the Farmers Loan & Trust Company of Sioux City. These were in the respective amounts of $12,000, $8000 and $6000, were issued at various times and were due on various specified dates not important here. A debenture is defined by Webster's Collegiate Dictionary, Fifth Ed., as a writing or certificate issued as an evidence of debt. It is sometimes known as a "debenture bond" and may be secured or unsecured. In the instant case the debentures seem to have been unsecured, and may be considered as time certificates of deposit, or promissory notes of the issuing bank, in the sense that they were promises to pay.

Each of the debentures was payable to "John Miller or Robert Miller, either one or the survivor." But it is the contention of the appellant that the intent of John Miller being the controlling consideration, and the writing establishing the joint tenancy being vague and unclear, evidence of intent was admissible; and evidence having been introduced which the objector-appellant thinks shows that John Miller meant to treat his sons alike in the distribution of his estate—to divide it equally—it must be held that Robert Miller holds the proceeds of the debentures in trust for himself and his brother in equal shares. There seems little doubt that it was the money of John Miller which purchased the debentures.

There is some evidence of a signature card; but we think it unnecessary to consider whether the record shows this card was signed by both John and Robert Miller, or by only one, or when it was signed, or what were its terms. The usefulness of a signature card under these circumstances would be slight. Checks could not be written against the debentures; they were due at stated dates, and would be payable, under their terms, to either of the named payees upon identification. The actual contract here, as in joint-tenancy deeds, was expressed on the face of the debentures.

██ II. There is no doubt that the words "or the survivor" were sufficient to create a joint tenancy. Any language which clearly shows an intent to make the grantees in a written instrument of conveyance or ownership joint tenants is sufficient.

In Wood v. Logue, 167 Iowa 436, 437, 149 N.W. 613, 614, Ann. Cas. 1917B 116, this language was held to show a clear intent to create a joint tenancy:

" 'In case of the death of the grantor, the grantees are to inherit the undivided one-third interest of the grantor, and in case of one of the grantees dying first, the grantor and the surviving grantee are to inherit that portion of the property that is owned by the grantor and grantee that are deceased. It is understood between the grantor and grantees herein that the one dying last is to be the absolute owner of the property herein described, and he or she may dispose of the entire property by will or in any other way that he or she may desire.' " See also Stewart v. Todd, 190 Iowa 283, 173 N.W. 619, 180 N.W. 146, 20 A.L.R. 1272.

The issuance of shares in a building and loan association to "Morris Polansky and Ida, his wife, or survivor" was held by the New Jersey Court of Chancery to effect a joint tenancy in the shares, the court saying: "But a joint tenancy is created when title is put in the names of husband and wife, or the survivor, and then, upon the death of one of them, the survivor becomes entitled to the whole." Able-Old Hickory Building & Loan Assn. v. Polansky, 138 N.J. Eq. 232, 233, 47 A.2d 730, 731. To the same effect is Tobas v. Mutual Building & Loan Assn., 147 Neb. 676, 24 N.W.2d 870, 871.

■ The general rule is as contended for by the appellant herein, that is, that the presumption is that any instrument, whether pertaining to realty or personalty, in which two or more persons are grantees, or payees, creates in them a tenancy in common in the absence of expression of a contrary intent. However, the language of the debentures here makes clearly apparent that intent to create a joint tenancy in John Miller and Robert Miller, and we so hold.

■ ■ III. Of course, language creating a joint tenancy in a written instrument gives the grantees, or payees, the rights of joint tenants. The most important and well established of these is the right of the survivor to take the whole property. Since the right of joint tenancy in personal property as well as in real estate is recognized in Iowa (see In re Estate of Winkler, 232 Iowa 930, 933, 5 N.W.2d 153, 155), it follows that language which

is sufficient to effectuate a joint tenancy in a deed will be equally so in personalty, such as stock certificates, bank accounts, or the debentures involved in the case at bar. In Hruby v. Wayman, 230 Iowa 653, 656, 298 N.W. 639, 640, we. said: "The word 'survivor' or 'survivorship' has no equivocal meaning * * *." Proper words creating a joint tenancy, such as we have held the language of the debentures to do, are always held to make a joint estate, with the whole interest going to the survivor upon the death of the other joint tenant, or joint tenants. See Switzer v. Pratt, 237 Iowa 788, 796, 23 N.W.2d 837, 842, in which the survivor was held to be the sole owner of the property involved and able to make a good title by conveyance by herself alone.

IV. Since we have held in the foregoing divisions that the language of the debentures created a joint tenancy in John Miller and Robert Miller, which instruments Robert Miller, as the survivor, was entitled to take upon the death of his father as his own property, it follows that the rule regarding proof of intent as laid down in Hill v. Havens, 242 Iowa 920, 930, 48 N.W.2d 870, 876, and In re Estate of Murdoch, 238 Iowa 898, 903, 904, 29 N.W.2d 177, 179, must come into play. It is that while intent is material, when it is clearly expressed in a written instrument such instrument may not be varied or contradicted by parol evidence. The intent of the parties here was definitely set out in the debentures, and the evidence of the appellant-objector tending to show that John Miller meant to treat his two sons equally was not competent. Parenthetically, it may be remarked that even if it had not encountered the rule of the Hill v. Havens and In re Estate of Murdoch cases, both supra, and had been considered this evidence would have fallen short of overcoming the definite language of the debentures.

We pointed out in Hill v. Havens, supra, at page 930 of 242 Iowa, page 876 of 48 N.W.2d, that any other holding would jeopardize many thousands of real-estate titles in Iowa. Since both personal and real property may be held in joint tenancy, and since the same rules of construction apply to each, if we were to hold that the clear language of the debentures involved herein might be denied or varied by parol, the same ruling would necessarily be applied to the joint-tenancy deed upon which numerous titles depend. It is settled, as we have pointed

out in Division III, that such a deed may not be challenged successfully, in the absence of mistake, fraud, duress or deceit, and that the surviving tenant has a title which may not be impeached. We apply the same rule to instruments which pass title to personal property, such as the debentures issued to John and Robert Miller in the instant case.

V. The appellant further contends that, if we hold the appellee to have good title to the debentures, they should be treated as advancements, and their amount charged against his share of the estate. The argument is ingenious, but no more. It is defeated at once by the well-established principle that an advancement must be an irrevocable gift. 1 Am. Jur., Advancements, section 7, page 718. The same authority further says, at section 22, page 725: "The definition of an advancement embraces the idea that the donor has irrevocably parted with his title in the subject-matter, and that complete title has passed to and become vested in the donee."

The definition given in 26A C.J.S., Descent and Distribution, section 91, page 773, is this: "An advancement is, strictly, an irrevocable gift in praesenti of money or property to a child by a parent to enable the donee to anticipate his inheritance to the extent of the gift; * * *."

Our own cases have laid down the same rule. In re Estate of Wiese, 222 Iowa 935, 938, 270 N.W. 380, 382; Woods v. Knotts, 196 Iowa 544, 553, 194 N.W. 953, 957, 30 A. L. R. 768; Bissell v. Bissell, 120 Iowa 127, 129, 94 N.W. 465, 466; West v. Beck, 95 Iowa 520, 522, 64 N.W. 599, 600; In re Estate of Lyon, 70 Iowa 375, 381, 30 N.W. 642, 644. Since the arrangement here was clearly not irrevocable, one of the essential requisites of an advancement is lacking.

Our conclusions are in accord with the judgment of the trial court.—Affirmed.

All JUSTICES concur.